**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| YOON JA KIM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 04 C 8141 |
| v. | ) |
| | ) |
| DAWN FOOD PRODUCTS, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Yoon Ja Kim filed a two-count Complaint in the Circuit Court of Cook County, Illinois, that Defendant Dawn Food Products, Inc. ("Dawn Food Products") removed to federal court pursuant to 28 U.S.C. § 1441(a). In her Complaint, Kim alleges a common law breach of contract claim and a trade secret misappropriation claim under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*. Before the Court is Dawn Food Products' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court denies Defendant's Motion for Summary Judgment as to Defendant's Wheat Bread Concentrate, Formula No. 34330. The Court grants Defendant's motion as to the other 39 challenged formulas.

**BACKGROUND**

**I.     Prior Lawsuit**

In the parties' initial lawsuit in front of this Court, Kim alleged that Dawn Food Products, a manufacturer of bakery mixes for retail sale, infringed on United States Patent No. Re. 36,355 (the "'355 patent") entitled "Potassium Bromate Replacer Composition." *See Kim v. Dawn Food*

*Prod., Inc.,* No. 01 C 1906, 2004 WL 2658068 (N.D. Ill. Oct. 13, 2004). The bread making industry once widely used potassium bromate as an oxidizing agent for bread dough. Its use became less common, however, after the Food and Drug Administration discovered that it caused cancer in laboratory animals. The invention of the '355 patent served as a substitute for potassium bromate. The '355 patent discloses a potassium bromate replacer comprising an ascorbic acid composition that acts as a slow acting oxidant in bread making. Kim is the named inventor and holder of the '355 patent, which the United States Patent and Trademark Office ("PTO") issued on October 26, 1999 as a reissue of United States Patent No. 5,510,129 (the "'129 patent").

In this prior litigation, the Court granted Dawn Food Products' Motion for Summary Judgment and Declaratory Judgment on the issue of non-infringement. The Court declined to exercise its supplemental jurisdiction over Kim's state law claims for breach of contract and trade secret misappropriation because Kim had failed to allege any basis for the Court's subject matter jurisdiction over such claims. Because Defendant removed Kim's state court complaint based on diversity jurisdiction, these claims are presently before the Court.

## II. Relevant Facts to the Present Motion for Summary Judgment

On November 5, 1993, Kim filed her first application for a patent, U.S. Patent Application No. 08/147,995 (the "'995 application"). (R. 19-1, Def.'s Rule 56.1 Stmt. Facts ¶ 4.) Kim abandoned the '995 application upon filing the continuation-in-part U.S. Patent Application No. 08/308,617 (the "'617 application"). (*Id.* ¶ 5.) While the '617 application was pending, Dawn Food Products' Chief Operating Officer, Miles E. Jones, contacted Kim about Kim's potassium bromate replacer composition after which Kim sent a Proprietary Materials

Agreement (the "Agreement") to Jones. (R. 32-1, Pl.'s Rule 56.1 Stmt. Facts ¶¶ 1, 2.) Pursuant to the Agreement, Kim mailed Jones the '617 application entitled "Method Of Preparing Potassium Bromate Replacer" on April 10, 1995. (*Id.* ¶ 3.) For purposes of this motion only, Defendant admits that the '617 application contained twenty-eight of Kim's trade secrets. (*Id.* ¶¶ 4, 5.) Each one of Kim's trade secrets, which are recipes for potassium bromate replacer, contain varying amounts of food acid. (*Id.* ¶ 5.)

On April 21, 1995, Jones reviewed Kim's patent application. (*Id.* ¶ 6.) Thereafter, Jones wrote Kim to inform her that Dawn Food Products already had a potassium bromate replacer similar to Kim's, but that Dawn Food Products' bromate replacers used food acid (tartaric), ascorbic acid, and phosphate, as well as other ingredients. (*Id.* ¶ 8.) Jones also explained to Kim that one of Dawn Food Products' customers had previously requested a bromate-free yeast raised mix and as of May 18, 1992, Dawn Food Products had supplied this customer and others with this particular formulation. (*Id.*, Pl.'s Ex. 6.) Finally, Jones informed Kim that Dawn Food Products did not want to assert ownership of Kim's formula and also wanted Kim to be aware of Dawn Food Products' use and ownership of a similar formula. (*Id.*, Pl.'s Ex. 6.)

On January 17, 1996, Kim wrote a letter to Jones alleging that Dawn Food Products was infringing on her patent rights. (*Id.* ¶ 10.) Shortly thereafter, on April 23, 1996, the '617 application issued as U.S. Patent No. 5,510,129 (the "'129 patent"). (*Id.* ¶ 12; Def.'s Stmt. Facts ¶ 5.) On May 2, 1996, Dawn Food Products sent a letter to Kim informing her why its potassium bromate replacer did not infringe on her '129 patent. (*Id.*, Pl.'s Ex. 19.) Less than two weeks later, Kim filed an application to fix the defects in the '129 patent. (Def.'s Stmt. Facts ¶ 16.) The PTO issued the reissue application as the '355 patent, which was the subject of the parties'

patent litigation. (*Id.*) For purposes of this motion, the parties agree that the relevant time period for Kim's pending trade secret and breach of contract claims is from April 10, 1995 through April 23, 1996. (Pl.'s Stmt. Facts. ¶ 16.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255. The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004); *see also* Fed. R. Civ. P. 56(e) (adverse party must set forth specific facts showing that there is genuine issue for trial).

**ANALYSIS**

**I. Misappropriation of Trade Secrets**

Kim first contends that Defendant misappropriated her trade secrets contained in the '617

4

application. To prevail on a trade secret claim under the Illinois Trade Secrets Act ("Act"), 765 ILCS 1065/1 *et seq.*, a plaintiff must demonstrate that (1) the information was a trade secret, (2) defendant misappropriated it, and (3) defendant used the information in its business. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.,* 342 F.3d 714, 721 (7th Cir. 2003); *Associated Underwriters of Am. Agency, Inc. v. McCarthy,* 356 Ill.App.3d 1010, 1019, 292 Ill.Dec. 724, 826 N.E.2d 1160 (Ill.App.Ct. 2005). Under the second element, misappropriation means stolen "rather than developed independently or obtained from a third source." *Composite Marine Propellers, Inc. v. Van Der Woude,* 962 F.2d 1263, 1266 (7th Cir. 1992).

### A. Schultz Affidavit and Attached Batch Cards

Defendant focuses on the second and third elements of Kim's trade secret claim contending that of the 40 bakery mixes that Kim is challenging, Dawn Food Products independently developed and owned 20 of these mixes.[1] Defendant also contends that it never commercially produced seven of the formulas and that it produced the remaining 13 formulas after Kim's recipes were publicly disclosed when the PTO issued the '129 patent. *See Rototron Corp. v. Lake Shore Burial Vault Co.,* 712 F.2d 1214, 1215 (7th Cir. 1983) (because grant of patent constitutes full disclosure of patented process, that process cannot be trade secret). Accordingly, Defendant asserts that it never misappropriated or used Kim's trade secrets contained in the '617 application.

In support of its argument, Defendant has submitted the affidavit of Mary Jo Schultz, the Vice President of Food Regulatory Affairs at Dawn Food Products. Schultz bases her affidavit

---

[1] Kim narrowed the relevant mixes to 40 in her Motion to Compel, Ex. A, entitled "Accused Products." (R. 5-1, Pl.'s Mot. to Compel, Ex. A.)

5

on her personal knowledge and upon her review of the files maintained in the normal course of business at Dawn Food Products as required under Federal Rule of Civil Procedure 56(e). *See Markel v. Board of Regents of the Univ. of Wisconsin*, 276 F.3d 906, 912 (7th Cir. 2002).[2] Attached to Schultz's affidavit are the batch cards for each of the bakery mixes at issue. The batch cards contain the formula used by Dawn Food Products in the production of each bakery product. (R. 17-1, Def.'s Summ. J. Mem., Ex. E, Schultz Decl. ¶ 4.) Further, the batch cards indicate when Dawn Food Products first used the formulas and any changes made to the formulas. (*Id.* ¶¶ 6,7.)

Kim contends that Mary Jo Schultz's affidavit and supporting documentation are not "objective evidence," such as documents describing constituent ingredients or product samples. Furthermore, Kim argues that the batch cards do not conclusively prove that Dawn Food Products did not use her trade secrets because the batch cards are dated after the relevant time period. Finally, Kim asserts that Dawn Food Products discarded relevant evidence, and thus she is entitled to a strong inference that any destroyed evidence would have been unfavorable to Dawn.

Due to the serious ramifications of Kim's spoliation argument, the Court first addresses this issue. The "destruction of or inability to produce a document, standing alone, does not warrant an inference that the document, if produced, would have contained information adverse" to Dawn Food Products. *Park v. City of Chicago,* 297 F.3d 606, 615 (7th Cir. 2002). Instead,

---

[2] Federal Rule of Civil Procedure 56(e) requires that parties must attach to their affidavits all certified copies of documents referred to in the affidavits. *See* Fed.R.Civ.P. 56(e). Further, to be admissible as evidence, the affiant must be a person through whom the exhibits could be admitted into evidence. *Scott v. Edinburg,* 346 F.3d 752, 759-60 n. 7 (7th Cir. 2003) (citation omitted); *Woods v. City of Chicago,* 234 F.3d 979, 987 (7th Cir. 2000).

6

Dawn Food Products must have destroyed the evidence in bad faith. *Id.* In other words, the "bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction." *Crabtree v. National Steel Corp.,* 261 F.3d 715, 721 (7th Cir. 2001). The violation of a record retention policy "creates a presumption that the missing record[s] contained evidence adverse to the violator." *Park,* 297 F.3d at 615 (citation omitted).

Kim first argues that Dawn Food Products had a continuing duty to preserve all evidence that was reasonably known or foreseen to be material to any litigation involving Kim and her intellectual property, contractual rights, and related rights starting as of January 17, 1996, the date of Kim's letter alleging patent infringement. (R. 32-1, Pl.s' Brief in Opp. at 14.) Kim's letter to Dawn Food Products stated: "This is to inform you that your company is infringing on my Patent Rights." (Pl.'s Stmt. Facts ¶ 10, Pl.'s Ex. 17.) Kim did not mention any contractual or trade secret rights in her letter. In fact, Kim herself did not discover the alleged "theft" of the trade secrets until 2000, as she alleged in her Amended Complaint in the patent litigation, presumably to meet the five year statute of limitations under the Illinois Trade Secrets Act. (*See* 01 C 1906 R. 23-1, Am. Compl. ¶¶ 24, 25.) As such, the Court would be hard-pressed to conclude that Kim's January 17, 1996 letter put Dawn Food Products on notice of Kim's trade secrets claim, especially because she herself was unaware of any such claim at that time.

In any event, Kim has not supported her argument – that Dawn Food Products selectively discarded pertinent evidence from the relevant time period in violation of its normal practices – with sufficient evidence in the record. For example, Kim suggests that product samples, namely, perishable food products, would be sufficient "objective evidence" to support Defendant's

7

claims, yet the record indicates that Dawn Food Products discarded such products after a short period of time in its normal course of business. (Def.'s Ex. 51, M. Schultz Dep. at 61.) Although the Court must construe the facts and all reasonable inferences in a light most favorable to Kim at this procedural posture, Kim has failed to present definite, competent evidence to rebut Defendant's evidence that it destroyed the perishable food products in its normal course of business. *See Butts,* 387 F.3d at 924.

Further, Dawn Food Products admits that the formulas for the products at issue were updated formulas, and that it destroyed the old batch cards. Nevertheless, the updated batch cards reflect the changes to the formulas over the years, therefore, the destruction of the old batch cards did not destroy the history of the formulas. (R. 17-1, Def.'s Summ. J. Mem., Ex. E, Schultz Decl. ¶¶ 6, 7.) Accordingly, Kim's argument that there is no way to determine whether any of the products were altered to use her trade secrets during the relevant time period is unavailing. As such, Kim has failed to set forth sufficient evidence that Dawn Food Products acted in bad faith, and thus Kim is not entitled to the presumption that the missing evidence would have been favorable to her. *See Crabtree,* 261 F.3d at 721.[3]

### B. Misappropriation and Use of Kim's Trade Secrets

#### 1. Scope of Kim's Trade Secrets

The Court thus turns to Dawn Food Products' argument that Kim cannot establish the second or third element of an Illinois Trade Secrets Act claim. To do so, the Court must first

---

[3] Kim also argues that the batch cards are invalid because the cards contain handwritten notes. Kim fails to develop this claim or cite pertinent legal authority to support her argument. Thus, Kim has waived this arguments. *See Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived").

look to the scope of Kim's trade secrets. Dawn Food Products contends that Kim's trade secrets are limited to: (1) Potassium Bromate Replacer I, comprising about 0.001 to 0.03 parts ascorbic acid per 100 parts flour and about 0.015 to 0.2 parts food acid per 100 parts flour; and (2) Potassium Bromate Replacer II, which is comprised of the above two ingredients and the added ingredient of about 0.1 to 0.5 parts phosphate per 100 parts flour, along with the optional ingredient of about 0.5 parts yeast food per 100 parts flour. (Def.'s Stmt. Facts ¶ 6.) For purposes of this motion, however, Dawn Food Products admitted that Kim's '617 application included 28 trade secrets, including her broadest trade secret – a potassium bromate replacer comprising ascorbic acid and food acid for use in yeast-leavened products. (R. 48-1, Def.'s Resp. to Pl.'s Stmt. Facts ¶ 5.) Thus, the Court must determine whether Dawn Food Products misappropriated and used Kim's broadest trade secret regarding the 40 bakery mixes during the relevant time period.[4]

### 2. Misappropriation and Use During Relevant the Time Period

As the batch cards and Dawn Food Products' admissions reveal, 31of the 40 mixes have both ascorbic acid and some level of food acid as ingredients, but do not have potassium bromate, and thus fall within Kim's broadest trade secret. (*See* Pl.'s Ex. 4.) Of those 31 mixes,

---

[4] Defendant contends that it has already proved that it independently developed some of the bakery mixes based on the parties' patent litigation. There, the Court concluded that Dawn Food Products' "Yeast Raised Donut Mix" and "Danish Mix" did not meet the food acid limitation and the yeast food limitation in the '355 patent. *See Kim v. Dawn Food Prod., Inc.*, No. 01 C 1906, 2004 WL 2658068, at *6 (N.D. Ill. Oct. 13, 2004). Thus, the Court concluded that these mixes did not literally infringe on the asserted claims in the '355 patent. *Id.* Here, there are 38 other mixes at issue and for purposes of this motion, Defendant admitted that Kim's trade secrets are broader than the patent limitations. (*See* R. 48-1, Def.'s Resp. to Pl.'s Stmt. Facts ¶ 5.) Therefore, Defendant's argument fails.

Dawn Food Products never commercially produced the Raised Donut Base-Chocolate, Yeast Raised Donut Mix-Frozen Dough, Sweet Dough Base, and New York Bagel Base mixes. (Def.'s Stmt. Facts ¶¶ 77, 78, 80, 81; Def.'s Batch Card Exs. 42, 43, 45, 46.) Moreover, of the remaining formulas, Dawn Food Products produced 12 of these mixes after the '129 patent issued on April 23, 1996, and thus these formulas fall outside of the relevant time period. (Def.'s Stmt. Facts ¶¶ 63-66, 69-75; Def.'s Batch Card Exs. 28-31, 34-40.) In order to determine whether there is a genuine issue of material fact for trial, the Court must examine whether Defendant produced the remaining formulas prior to April 10, 1995 and if so, whether Defendant changed the formulas to the mixes during the relevant time period.

Defendant has produced its Bun Base products from at least June 19, 1993. (Def.'s Stmt. Facts ¶¶ 23, 24, Def.'s Batch Card Ex. 9.) Although changes were made during 1993 and 1994, Dawn Food Products did not change the formula during the relevant time period. (*Id.*) Dawn Food Products started producing its New Richer Bun Base mix as early as December 12, 1993 and changes were made to the ingredients in 1994. (Def.'s Stmt. Facts ¶ 25, Def.'s Batch Card Ex. 10.) Nevertheless, Defendant did not change the formula during the relevant time period. In fact, the batch card does not indicate any activity or further changes until March of 1997. (Def.'s Stmt. Facts ¶ 26; Def.'s Batch Card Ex. 10.) Defendant started producing the Super Dough Base prior to April 19, 1994 and Super Dough Mix since at least January 6, 1995 and did not change these formulas during the relevant time period. (Def.'s Stmt. Facts ¶¶ 27, 28, 30, 31; Def.'s Batch Card Exs. 11, 12.) Further, Dawn Food Products started producing its Yeast Raised Donut Mix products from at least January 12, 1994 and did not make any changes to this mix during the time period in question. (Def.'s Stmt. Facts ¶¶ 32, 33; Def.'s Batch Card Ex. 13.)

Next, the record reveals that Defendant started producing the Liberty Yeast Raised Base mix from at least December 20, 1993 and made no changes to the mix during the relevant time period. (Def.'s Stmt. Facts ¶¶ 34, 35; Def.'s Batch Card Ex. 14.) Dawn Food Products started producing its Originator Variety Bread prior to December 10, 1993 and made no changes of any kind to the formula during the relevant time period, although it issued a new eight digit code on December 11, 1996. (Def.'s Stmt. Facts ¶¶ 40, 41; Def.'s Batch Card Ex. 17.) In addition, Defendant started producing its Italian Bread Base mix prior to December 22, 1992 and its Bun Concentrate products as early as July 22, 1992 and did not make any changes to these products during the relevant time period. (Def.'s Stmt. Facts ¶¶ 45, 46, 49, 50; Def.'s Batch Card Ex. 19, 21.) The evidence further reveals that Dawn Food Products has made the Danish Mix products from at least January 3, 1991 and made no changes during the relevant time period except that Defendant assigned the mix a new formula number on December 5, 1995. (Def.'s Stmt. Facts ¶¶ 51, 52; Def.'s Batch Card Ex. 22.)

Also, Defendant has produced its Danish Base and Seven Grain Bread Mix since prior to December 13, 1993 and made no changes to these formulas during the relevant period. (Def.'s Stmt. Facts ¶¶ 47, 48, 53, 54; Def.'s Batch Card Exs. 20, 23.) Similarly, Dawn Food Products started producing its Multi-Purpose Yeast Raised Mix before January 17, 1992 and made no changes of any kind to these mix products during the relevant time period. (Def.'s Stmt. Facts ¶¶ 57, 58; Def.'s Batch Card Ex. 25.) Next, the record indicates that Dawn Food Products has produced the U.P. Chocolate Yeast Raised Base products as early as January 6, 1994 and made no changes to these products during the relevant time period. (Def.'s Stmt. Facts ¶¶ 59, 60; Def.'s Batch Card Ex. 26.) Finally, Defendant has made its Yeast Raised Mix since before

October 6, 1992 and did not make changes to the formula during the relevant time period. (Def.'s Stmt. Facts ¶¶ 61, 62; Def.'s Batch Card Ex. 27.)

In sum, as to the above formulas, Kim's contention that Dawn Food Products changed its earlier produced formulas to incorporate her trade secrets is not supported by the record. Further, Kim has failed to present definite, competent evidence to rebut Defendant's summary judgment motion.[5] *See Butts,* 387 F.3d at 924. Thus, there are no genuine issues of material fact as to Dawn Food Products misappropriating Kim's trade secrets as to these formulas.

There is one remaining formula – Dawn Food Products' Wheat Bread Concentrate, Formula No. 34330, former Formula No. 55 TT 8929. Defendant contends that it produced this formula prior to December 21, 1995, but it does specify if "prior December 21, 1995" is before April 10, 1995, and thus outside the relevant time period. (Def.'s Stmt. Facts ¶ 43, Def.'s Batch Card Ex. 18.) Meanwhile, Defendant ignores the well-established standard at this procedural posture, namely, that the party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact, *see Celotex Corp.,* 477 U.S. at 323, when it argues that Kim has failed to establish Defendant's misappropriation of her trade secrets as to this formula. In short, viewing the evidence and all reasonable inferences in favor of Kim, there is a genuine issue of material fact as to whether Dawn Food Products misappropriated Kim's broadest trade secret in its Wheat Bread Concentrate formula.

---

[5] Kim has failed to set forth any evidence supporting her claim that Dawn Food Products may have produced the challenged bakery mixes under a different name or formula number during the relevant time period. As such, Kim cannot create a genuine issue of material fact by merely raising this speculative argument. *See Payne v. Pauley,* 337 F.3d 767, 772-73 (7th Cir. 2003) (conclusory statements unsupported by the record are insufficient to avoid summary judgment).

**II.      Breach of Contract Claim**

Next, Kim alleges that Dawn Food Products breached the parties' Proprietary Materials Agreement by engaging in the unauthorized use of one or more of her trade secrets. To prevail on a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid and enforceable contract, (2) her own performance under the terms of the contract, (3) defendant breached the contract, and (4) she suffered an injury as a result of the defendant's breach. *Burrell v. City of Mattoon,* 378 F.3d 642, 651 (7th Cir. 2004); *Zirp-Burnham, LLC v. E. Terrell Assoc., Inc.,* 356 Ill.App.3d 590, 600, 292 Ill.Dec. 289, 826 N.E.2d 430 (Ill.App.Ct. 2005).

Here, the parties agree that the relevant issue is whether Defendant breached the parties' agreement. Dawn Food Products' sole argument is that because Kim's breach of contract claim is predicated on the alleged theft or misappropriation of Kim's trade secrets, it cannot be liable for breaching the parties' contract. As discussed, however, there is a genuine issue of material fact concerning the misappropriation of Kim's broadest trade secret in connection with Defendant's Wheat Bread Concentrate, Formula No. 34330. Thus, the Court cannot dismiss this claim as a matter of law as Defendant suggests because a factual issue exists concerning the Wheat Bread Concentrate mix.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendant's Motion for Summary Judgment.

Dated: March 17, 2006

                                            **ENTERED**

                                            _____
                                            **AMY J. ST. EVE**
                                            **United States District Court Judge**